The next case on the calendar is United States v. Green. This is a case of United States v. Green. Chief Judge Livingston, and may it please the Court, James Egan for Willie Green. Video evidence from the scene clearly reveals that Willie Green did not discharge the firearm on December 30, 2021. Yet the district court found that he did, and used that finding to apply the four-level in connection with enhancement of 2K2.1b6 and to support imposition of the 63-month sentence. Now, I don't mean to cut you off very early on. I do apologize for that, but I think it is important to clarify something. When you say the evidence shows Mr. Green did not fire the gun that night, you mean the evidence of the video of the person crouching behind the car that's seen in the video actually discharging a weapon? Correct, yes. You're not saying he didn't shoot, that he couldn't have been elsewhere at the scene shooting a weapon, are you? I am saying that because there was no evidence that anybody else was firing a weapon other than the person at the table. Oh, I'm sorry. You do concede that he was at the scene. Not conceding, but not challenging. Not challenging. Right. But I looked at the video. I'm not a video expert. But it does appear to be that someone else also using the same boots, the work boots that the individual shooting behind the car and the boots of the individual that's identified as your client are the same. But fitting the description of your client in terms of the clothing moving forward and appearing to crotch or to get down in front of a vehicle where in fact shell casings that forensically were then tied to the gun found on your client were located. Isn't that enough in terms of the standard of preponderance of the evidence for the court to support a finding in the record that he may have been the individual shooting the gun from that angle? I agree with you on the video. I understand your argument that the video shows a different person shooting, but it shows a broader scene. And there are shell casings that are retrieved that night. There's a separate video of officers retrieving shell casings that come back to that weapon. And the video appears to show a person who's identified as your client moving in that direction. Why isn't that enough on a preponderance of the evidence, Dan? For several reasons, Your Honor. Initially, the only person identified as a shooter is that person at the rear of the vehicle. The detective lawyer who was called by the government testified to that fact. Eyewitnesses at the scene, particularly an eyewitness from the store, a convenience store located at the corner there where the video camera was also mounted, identified the shooter as that person at the rear of the vehicle. As for the shell casings, there really isn't evidence as to exactly where they were found on the sidewalk. You can see in the body camera an officer points up towards Madison Street. Madison Avenue, I'm not sure what it is. But anyway, that street. And we're not sure exactly how far away from that gold car that remains on the scene. Well, wouldn't the forensic report indicating where the shell casings were picked up indicate the location? I mean, police foot markers. Yeah. I don't have any evidence that they did that. As far as I know, they just said it was 62 Grand, which is basically just the address generally where they were found. I mean, I watched that video, and the officer looks like he's pointing to the front of the car where the shell casings are. Yeah, there's an officer who's pointing to the front of the car, but the officer who's speaking about the shell casings is pointing up away from the car towards where the white car was found. We also have the fact that a detective lawyer testified that he investigated the scene, would have known about where the shell casings were found, and with that knowledge identified the casings as coming from, in theory, I mean, from the shooter at the rear of the car, because that's the only person identified as shooting a weapon on that evening. So the government's theory at the hearing was that the person who crossed the street and crouched down, that was the same person. And that's the district court's finding, too. Correct. The government did, in the appellate brief, make the argument that Judge Kahn is making that there might have been two shooters. Right, but the government is making, sorry, I'll cut you off. But in front of the district court, they didn't make that argument. The detective lawyer didn't make that argument during his testimony, and that wasn't the district court's finding. The district court's finding was because of the brown boots, the person who crossed the street, and the person who crouched down and fired were the same person. That was the critical finding, correct? Yes.  And the government also identifies a second possible shooter at the rear of the vehicle as well, and that person is clearly not Willie Green because of the detail running down the white lettering or whatever, running down the left pant leg. And the district court also found that the defendant was the shooter on December 19th. Correct. Even though the government didn't even pursue that. Did not pursue it, did not even, following a request for a microscopic examination of the casings, didn't even provide those, and then at the hearing abandoned any reliance on December 19th. And it was a blue car on December 19th, not a white car, right? The cars are different, correct, and there's no indication that Willie Green was anywhere near that location on December 19th. How close was that location to this location in terms of... I can't answer that, I'm sorry. It's in the city of Albany, but that's all I can tell you. Yeah, we do know that your client possessed the weapon in January, two days later. Correct. And the district court gave some attention to this theory of possessing with reason to believe it would be used in connection with another felony offense, the reason to believe standard. Correct. Can you address what you think reason to believe means in the context of this enhancement? I mean, what is it referring to? Well, I think... I mean, just to tell you what my...  It's knowledge, intent, or reason to believe. We have cases, you've cited them, where intent seems to be there's a purpose that I'm possessing a weapon, it's going to be used in an upcoming felony. Right. But also knowledge, and then this reason to believe. Right. I think there's a Seventh Circuit case that the government cites, and I addressed as well. I think that's probably the furthest it's stretched. It's a belief, a reason to believe that the gun, in that case, a bit odd. The defendant said that he just lost, like, ten firearms in a row. The Seventh Circuit found that even if that were true, he knew it was likely that they would be retrieved by gang members, and gang members who would use the gun for illegal purposes, right, felonious purpose, right? Well, I had a question, because you were... One argument, strand of argument below was this is not... He wasn't the shooter. Right. This was perhaps a community gun. It ends up in his possession two days later. Right. But wouldn't that theory support the enhancement under this reason to believe theory? I think it's possible, but there's really no evidence or... And what's the... No finding by the district court that it was a community gun. That it was a community gun. That he knew what the community was up to, and that he then, when he took possession of the gun, it was in furtherance of that community use, I mean, that being some felonious purpose, right? So there's just an absence of any finding, and that's because the government never pressed that argument below. And so what we have is the district court making a conclusion that's without any finding and without any basis, really. Can you touch on the... Assuming it was error on the harmlessness issue.  I know that you cite Feldman. Yeah. But as I understand it, in Feldman, a court can't make decisions about adjustments, multiple, and then say, even if I'm wrong on five things, my sentence would be the same. Here, it's only one enhancement, right? One legal issue. How does Feldman really apply in this case? And we have other cases where, when it's one issue alone, and the court says, well, even if I'm wrong on this enhancement, my sentence would be the same. Can you address that?  And that's Darrow, which the government cites as well, the single enhancement-ish context where, you know, there's a question about whether that applies. I think what I'm really pointing to in Feldman is the court's concern that judges would just, you know, cite, I would impose the same sentence anyway, as a kind of way to prevent review and insulate their sentence, right? And that in order for that to really carry weight, the court needs to explain how it would arrive at that sentence independent of the enhancement, which is really our argument here. If it were that your client was convicted of murder shortly thereafter and arrested for other crimes, wouldn't that be sort of self-evident that somebody is standing before the court who has a criminal history, both pre and post this conviction, that would inform the court's view on why the sentence should be, in this case, what it was, you know, which was, what, 63 months? Yeah, I understand that. But I would say two things, really. So when the sentence is imposed consecutively, and I looked at, I didn't see any case law on whether this harmless error standard applies in that context. I'd caution the court to adopt that rule here, where there really is no explanation that the court would also impose it consecutive, absent the enhancement. And secondly, the factual error that we've been discussing here, that is independent of the enhancement. I mean, if you were to find it, it's harmless, right? That fact was still relied on to impose the 63-month sentence. So this is a situation where there's a legal argument regarding the facts are agreed upon, but there's a legal argument whether a guideline enhancement applies or not. The judge says, well, even if that enhancement didn't apply, I would give the same sentence. But here, the district court found that he was involved in two shootings. I find by preponderance of the evidence he was involved in two shootings, right? And that was the basis for the sentence. So his statement that I would give the same sentence, even the guideline calculation was wrong, doesn't undo if he's wrong about the two shootings. Right. I suppose if he had said in another case, even if I were wrong about everything. Yeah. But then we get it. He could have said, even if I'm wrong about the two shootings, because you committed a murder after, you know, because of this other murder that you committed, I would give you the same sentence. Then it might be harmless. It would be a stronger case, for sure.  I mean, it is the factual error that's the heart of it, right? Yes. I mean, because when the enhancement, when he says I would give the same sentence, even if I made any error as to an enhancement, it was only one enhancement that you were arguing about. Right. So he well knew this is the enhancement. It's an issue. Correct. Yes. But he did not, but there's still a, if there is a factual error in his, in the read of the video, then that statement doesn't address that. It didn't inoculate that, yeah, error. Yeah. Okay. Thank you. Good morning, and may it please the Court. Joshua Rothenberg for the government. The defense is asking you to miss the forest for the trees with regard to the December 30th shooting. Mr. Green possessed the firearm used in the December 30th shooting. Two days later, at the same intersection, he was dropped off by what appeared to be the same car. There's no question to those facts. He also had ammunition for that firearm in his apartment when it was searched 11 months later in connection with the murder investigation. And what that indicates is that it was his firearm. And so it is more likely than not that he was the one who used it. Counsel, are you still claiming that the person observed in the video crouching down, shooting at the moving car, was the defendant? Yes, Your Honor. How do you, like, I looked at all the videos and the still photos, and they're not wearing, they may be wearing the same shoes, but they're not wearing the same pants. They're not wearing the same coat. One, you know, the defendant has a hoodie. The other one has a puffer jacket with a hood. I mean, they don't look like the same person. So, Your Honor, I think two points on that. Number one, the defense is taking as true that the person who crossed the street was the defendant, and then that the person who knelt was, has to be that person to be the defendant. But that's not actually what the district court found. The district court first found they were the same person and then found it was the defendant. So it's not the case that the district court's chain of reasoning.  Help me understand that, because I'm a little confused by that. It was the government's own witness, right, the law enforcement officer named Lawyer, who said that's the defendant. And he identified the defendant as the person not wearing the puffer jacket. So, Your Honor, he identified the person who crossed the street, the person who you can see the gray hood visible. He identified that person as having a build consistent with Mr. Green's. When the defense actually asked him, can you make a positive identification, he said no. I can't see a space. No, I understand that. But it feels like the government's got a moving target. Like you're saying on one hand, yeah, it's the same person. Then you're saying, well, no, we're not really saying it's the same person, but it was the defendant who did the shooting. Help me understand how that's consistent. Let me attempt to clarify here. I think you are certainly right. Our theory before the district court was that that was the same person. We still think that the district court did not clearly err in that, because we do not think those discrepancies in dress you identified, we think that those were the results of a fuzzy image and the darkness that was there. But even if you were to determine that those are not the same person, the defense is here saying that the clear error was finding the defendant was the shooter. And the district court did not specifically say, well, since I think that the person who crossed the street was the defendant, and since I think it's the same person, I'm going to therefore. Yes, he did. On page appendix 190, he's talking about the videos, and he says the hoodie, the stuff, look at the shoes, look at the shoes in those pictures. They wore the same shoes, weren't they? Yes. The district court clearly, and I agree with Judge Kahn on this, that certainly the detective suggested that this person walking across the street's build was consistent with your client, and that the person who was crouching and shot was the same person. That was the suggestion of the detective. That was the finding of the district court. And I suggest to you that it's impossible that that's the same person. As Judge Kahn noted, it may be not the perfect video, but the person walking across the street has a jacket on with no hood. He has a gray hoodie underneath the jacket, and he has light blue jeans on. And it is clear enough from the shooter, the shooter has a puffy black jacket with a black hood and dark pants. There is no way that that is the same person. And the district court's finding, central finding for why it was the defendant was that it was the same person. There may be other theories, but you cannot suggest that the district court didn't base its entire decision on that finding, which was suggested by the witness. So, Your Honor, I think there's a little there if I could unpack. I'll take your point and your suggestion and move from there. I do want to try to suggest there were other components to the finding. On page 192, he says there's no question about the vehicle. He discusses the evidence being overwhelming. That wouldn't be so just from, look, there's this person who has a build consistent with the defendant's build who I think is the same. Why don't you say it's something about the vehicle? That's appendix page 192, Your Honor. I'm looking at it. He says they found ammunition in his apartment that was the same. It's following that, Your Honor. I'm sorry? It's following that portion. It's in the same paragraph of the record. I believe he says there was ammunition that's the same. And then he says, and there's no question about the vehicle. And then... I don't see that, but... Your Honor, I believe it's there. It's at the top of 192. Yes. All right, all right. And there's no question about the vehicle and his, now they had a search warrant. It's... Yes. Your Honor, he cited a number of facts in that paragraph, but I'm pointing out that he... You're suggesting that the vehicle would be enough for preponderance. In fact, there's a white vehicle for both. You would suggest that would be enough, right? Your Honor, I was... But the finding regarding it being the same person, that wouldn't be enough to still sustain... Your Honor, what I'm suggesting is that the fact that he was there two days later with the same gun being dropped off by the same vehicle, that is powerful evidence. I would submit it makes it more likely than not... I would like you to send it back to the district court to make whether or not that determination, whether or not even assuming the video does not show that it's the same person, whether the remaining evidence, whether the white car, and that it was two days later. Is enough. Why should we make that determination? It's a pretty important decision, right? Your Honor... Whether someone committed two shootings in addition to the crime they're charged with? I certainly agree it's an important decision, and this court could, of course, remand. I think that the reason would sound the most... Well, you're going to remand about December 19th? Explain how, what was the evidence that he was involved on December 19th? The car was different, right? The car was different. It was the same gun. The government didn't even argue, the government didn't even argue he was involved on December 19th, right? Your Honor, we did in our sentencing memo note that we believed he was involved on December 19th. At the FATACO hearing, we did not present further evidence of that. So what was the evidence that he was... The government didn't present evidence he was involved on December 19th. So what was the basis for the court's finding? It was the same gun, Your Honor, and I think at that point the court could also draw a propensity... You said it's the same gun. It's the same... There was no microscopic comparison establishing that it was the same gun, right? Your Honor, there was not one done. The defense did concede that it appeared to be the same gun in their sentencing memorandum. This is Appendix page 97. The Niven results here appear to allow for the conclusion... I did consider that to be a concession. They said it appears it's the same gun. They then immediately noted that they wanted the microscopic comparisons, and I think it's pretty clear, even the pre-sentence report, I think you can see in your papers that that's what's normally done. The Niven... Yes, Your Honor. ...is not used for court, that a microscopic comparison is done rather than just relying on that, right? Yes, Your Honor, and... Niven doesn't rely on that to establish probable cause. Yes. And, Your Honor, I will just point out, I think the defendant did repeatedly tell the district court, page 97, page 95, that it did believe that the evidence was sufficient. It actually used that the evidence, and I quote, could support a conclusion that the gun possessed by Willie Green on January 1, 2022, was likely discharged on December 19, 2021. I think that what the defense did contest at that point, because its theory was that this was a community gun, what it contested was his identity on December 19. On appeal, it has made very few arguments about that. Instead, what it has argued is this Niven point, which it did not argue in the district court case. But isn't there just a fundamental problem that sort of requires remand? If all three of us have looked at the video and said that the district court erred in concluding that the individual that he said has a particular, that your witness said has a build consistent with the defendant, crossed the street and then was the shooter. If we look at the video and, no, that's wrong. That's a factual mistake. How is it possible that we could say that we're absolutely convinced that that had no effect on the correctness of the outcome? Is it a matter of harmlessness or because there's some other theory that is in the record? I'm having difficulty with that. Well, I'll try to help you, Your Honor. I think in United States v. Escobar, this court said a factual error would not necessarily require reversal if it is based on conduct that the defendant does not deny and which is independent of the error. And here I think that conduct is the murder. It is the drug trafficking. It is the misdemeanors committed while in prison for the murder. That's what the district court actually bases itself on. But that's on harmlessness, right? Yes, Your Honor. That's not on upholding the enhancement itself.   That would assume error. That would assume error. And I still think you could uphold the enhancement if you found error. I took that to be the question, that it would be harmless if you determined that the district court sentence was based on what it said, which is, and I'm quoting here, Mr. Green, you're not amenable to living in a crime-free or violence-free lifestyle or rehabilitation. It made that finding based on his record. That's Appendix Page 198. It made that finding based on what he had done after January 1st. I will also note, Your Honors, you could determine that the increase itself was properly applied on the reason-to-believe prong. And so the only question is whether the factual errors about the shooting were harmful, assuming there were errors, which, of course, we do not concede. And it's the reason-to-believe theory. So, Your Honor, the defense told the district court that this was a community gun that was being passed around and different people were using it for crimes. They are apparently not contesting but not conceding this morning that Mr. Green was present when it was used in a crime on December 30th. So he surely knew that it was being used in crimes. If he was merely the current possessor, it's not his gun, which would, of course, be the best fact for us in proving he was the shooter on December 30th. If it's not his gun, then he's just the current possessor. He knows it's going to go back into the pot and he has reason to believe it's going to be used for a felony again, as it was on December 19th and December 30th. But the government, as I recall, told when the court was going into the second part of the two theories to apply the enhancement, the government said, no, no, no, Your Honor, we're not relying on that. And the defense, both the defense and the government said, Your Honor, we're not relying on the second part of 2K21B6B, which is possessed or transferred any firearm or ammunition with the knowledge, intent, or reason to believe. So what are we to make of that when the government affirmatively says to the court, no, no, no, no, we're only here on the first part, which is the basis for the enhancement, subsection 1, which is used or possessed any firearm or ammunition in connection with another felony? Well, two answers, Your Honor. First, in United States v. Granick, this Court said that a sentencing court is required to independently calculate the guidelines and based on the record as a whole. And in United States v. Ryan, this Court actually considered both prongs of 2K21B6B, even though in that case the district court did not specify which prong it was using, and the government had only based it on the first prong. So I think following those precedents, you should consider the district court's determination. Given that the government wasn't even relying on that alternative finding, for them to have a full opportunity to explore that. For example, they did want to have microscopic comparisons done of the gun, right? That was something they asked for in discovery or not? It was, Your Honor. I believe that was only— So if this is the theory, that it's a community gun, it would be really important to establish that not just through this generalized 9-bin database, but through a microscopic comparison, that it was the same gun. That would be pretty important on this alternative finding, wouldn't it? It would be key. If it's not the same gun, then the whole theory that this was the community gun would be gone, right? Well, first of all, Your Honor, again, I believe they conceded that it was the same gun. I hear that Your Honor does not believe that concession.  But I do just want to make that point, if I may. All right. However, I think that the defense also told the Court it was a community gun, which they would still need to work as a theory for the December 30th shooting where they're not—I believe microscopic comparisons were turned over. I'm not 100 percent sure about that, but I believe that's true. They certainly haven't alleged otherwise on appeal. So they would still need that theory to work for December 30th, because, again, our best piece of evidence for December 30th is that it's the same gun he's possessing on January 1st. And if you believe it's his gun, that makes it more likely than not that he's the shooter. Now— I guess I'm struggling with the arguments I'm hearing from the government today were not presented to the district court. And I'm struggling to understand how the government didn't pursue these other theories if it looked at the same evidence we looked at. Can you help me understand why the government pursued this theory that the individual seen shooting is the defendant? So— And I'm struggling to—  —why we should accept these arguments now— Okay. —when the government chose not to make them below. Well, Your Honor, I understand there are some arguments we didn't make below. We did argue the person seen shooting was the defendant, and I think that that argument, whether or not the crossing the street is involved, as I said. But I think that ultimately what this is about is that you're reviewing the district court's decision, and the district court did make these findings. The district court did find that he had reason to believe that the gun would be used in a further shooting. The district court did find that he used the gun in December 19th. That's what you're reviewing. And I think in United States v. Sinning Smith, the Supreme Court made clear that even the party presentation principle yields when a court has made a decision that is on review, and that review of that decision can involve the Supreme Court will sometimes appoint anarchists to argue for the court's decision, even though neither party wants to defend it. Here the government is willing to defend— But put aside what you think is their concession that it was a community gun. What evidence was there before the district court that it was a community gun? So, Your Honor, there were two people's DNA found on it, the defendant's and somebody else's. There was also testimony about community guns, which the defense elicited from our expert. Our expert said they were becoming rarer, but did talk about what they are. And the district court indicated its own familiarity with community guns. So if there's more than one person's DNA on a gun, that makes it a community gun? The district court—the witness, as you noted, said it's becoming more rare that community guns are used. So, Your Honor, I understand this to be an alternative, because I understand it to be if it's his gun, he's more likely than not the shooter. If it's not his gun, that's where he gets into, okay, so it's not my gun. I'm just the current possessor of it on January 1st. I'm borrowing it from the community pot. And that's why I think that even if you think there's error with regard to finding he was the shooter on December 30th, it's, you know, then, okay, he has the gun on January 1st. And how does he have the gun? Well, I think the best answer, if it's not his gun, is it has to be someone else's. I'd be happy to take any other questions the Court may have. Otherwise, I'd urge you to affirm, except, of course, for our limited concession regarding the irana. Thank you.  We'll hear rebuttal. So a few points. Defense counsel did not concede that the gun was the same as in December 19th. He said it appeared to be, and then he said, at best, it shows that it's similar. And he asked for the microscopic comparisons, which were never revealed. The community gun idea was merely questioned. It was not argued for. The defendant did not make a concession or an argument that it was a community gun. It was just a possible theory. And it was rejected by the government's witness. I agree that it was rejected. But I thought that that was the theory, that I wasn't there at first. I wasn't even there on the 30th. And the only reason the gun, my printer on the gun, is that it's a community gun. So he did make that argument, right? Your client did. I understand the government rejected it and tried to say, you know, it's a rare thing now, community guns. I think it was proffered as a possible explanation, but not as the theory that the defendant was asking the court to adopt. So the other theory is he had the gun because it's his gun? Or that it wasn't his gun at all? The other theory is that he came upon it innocently. That he was what? That he came upon it innocently. That it was not part of a community, and we don't know. The bottom line is that we don't know how he came upon the gun. And that's one of the reasons we're in this position. Thank you. But your argument is just that there is not enough to find by a preponderance, or at least there was no analysis. The analysis was so wrapped up in the mistake that there's no analysis we can follow that would say by a preponderance, because he possessed the gun on January 1st, and we know that. Correct. And he had the ammunition for the gun, that he was present and possessed, whether he was a shooter or not, but he possessed the gun on December 30th. Right. And certainly not for December 19th. Correct. Yes. And, of course, the government abandoned its relation, or, sorry, reason to know prong argument at the beginning. Thus, the whole fatical hearing and the whole sentencing hearing was about whether he was a shooter. What happened with respect to the request for the microscopic comparison? I guess I'm a little confused about what happened there. I asked my colleague, and he was not sure. It was never provided. That's all I know. I don't know if the government said that they didn't do it or they didn't have it. I don't know the explanation. I can dig deeper if the court wants. With that, we ask that the case be remanded for plenary resentencing. Thank you. Thank you both, and we'll take the matter under advisement.